**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

TRAVIS FOOTE,                  )
                                    )
            Petitioner,   )
v.                           )        Case No. CIV-09-219-F
                                    )
DAVID PARKER, Warden,     )
                                    )
           Respondent.  )

## <u>REPORT AND RECOMMENDATION</u>

Petitioner Travis Foote, a state prisoner appearing *pro se*, has filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 [Doc. #1] and a Brief in Support of Application for Habeas Corpus [Doc. #4] (Brief in Support) challenging the constitutionality of his state court conviction. Respondent has filed a Response [Doc. #13], and Petitioner has replied [Doc. #17] (Reply). For the reasons set forth below, it is recommended that the Petition be denied.

## I.    <u>Relevant Case History</u>

On March 10, 2006, Petitioner was convicted after a jury trial in the District Court of Oklahoma County, State of Oklahoma, Case No. CF-2003-6028, of one count of Rape in the First Degree by Instrumentation and one count of Lewd or Indecent Acts with a Child under Sixteen. He was sentenced to a prison term of sixty years on Count I and a prison term of twenty years on Count II, to be served consecutively. Petitioner appealed his convictions to the Oklahoma Court of Criminal Appeals (OCCA) raising the following issues:

    1.     The evidence was insufficient to sustain the convictions;

2.     Reversible error occurred when the prosecutor introduced evidence of other crimes;

3.     Trial counsel was ineffective in "opening the door" for admission of prejudicial evidence concerning Petitioner's prior convictions for violent crimes;

4.     The trial court improperly limited Petitioner's closing arguments depriving him of counsel; and

5.     Cumulative error denied Petitioner a fair trial.

The OCCA affirmed Petitioner's convictions on August 29, 2007.  *See* Response Exhibit 3,

OCCA Opinion.

Petitioner then filed an Application for Post-Conviction Relief in the trial court raising

the following issues:

1.     Petitioner was denied his right to confront a witness against him where the trial court allowed the State to play a videotaped interview of the victim;

2.     Petitioner received ineffective assistance of trial counsel when trial counsel "opened the door" to admission of evidence of Petitioner's prior felony convictions;

3.     Petitioner was denied a fair trial and impartial jury because a juror who had been the victim of sexual abuse was not excluded by the trial court for cause;

4.     Petitioner was denied a fair trial in that the State introduced evidence of his flight from Oklahoma during its case-in-chief;

5.     Petitioner was denied a fair trial and the marital privilege was violated by the introduction of statements he had made to his former wife while they were married;

6.     Petitioner has evidence of his innocence that was not previously presented during the trial due to unavailability of a witness;

2

7.     The trial court erred in allowing the State to admit evidence of other crimes or acts of child abuse;

8.     Petitioner is actually innocent of the crimes, and the evidence is insufficient to support his convictions;

9.     Petitioner was denied his right to have the jury determine his punishment where the trial court ordered that the sentences would be served consecutively; and

10.    Petitioner received ineffective assistance of appellate counsel.

Response Exhibit 4 at 2, Order Denying Application for Post-Conviction Relief.

Petitioner appealed the trial court's denial of post-conviction relief to the OCCA raising the following issues:

1.     Petitioner's due process and equal protection rights were violated because his conviction was not overturned on the basis that "other crimes" evidence was introduced under the "greater latitude" rule which has since been overruled;

2.     Petitioner was deprived of effective representation of trial counsel in that:

   A.     Trial counsel "opened the door" for admission of prejudicial evidence of previous convictions;

   B.     Trial counsel failed to lay a proper foundation to object to the State's deceitful reference to S. D.;

   C.     Trial counsel failed to object to the Court's "coaching" the State on questioning the defendant;

   D.     Trial counsel failed to introduce the affidavit or testimony of Tamara Hadlock;

   E.     Trial counsel failed to object to the State's argumentativeness with a key defense witness;

   F.     Trial counsel failed to object to the State's introduction of hearsay evidence;

3

G.     Trial counsel failed to object when the State "testified" through the District Attorney that Petitioner had had sex with Tamara Hadlock when she was 16, a fact not in evidence;

H.     Trial counsel failed to object to hearsay testimony of Detective Krug who quoted another detective who never testified; and

I.     Trial counsel failed to disclose to Petitioner that he, trial counsel, had been diagnosed with attention deficit disorder.

3.     Petitioner was deprived of effective assistance of appellate counsel in that appellate counsel failed to raise the issues Petitioner raised in his appeal to the OCCA after denial of his post-conviction application;

4.     Petitioner was deprived of due process and a fair trial in that during jury deliberations, the jury was allowed unfettered access to a videotaped interview with the victim in violation of state law;

5.     Petitioner is actually innocent, and the evidence at trial was insufficient to support his convictions; and

6.     Petitioner was denied a fair trial by the cumulative effect of errors.

Response Exhibit 5. The OCCA affirmed the denial of post-conviction relief on January 15, 2009. Response Exhibit 6.

## II.    **Petitioner's Claims for Federal Habeas Relief**

In this action, Petitioner raises the following grounds for relief:[1]

1.     The evidence was insufficient to support a conviction;

2.     Petitioner is entitled to habeas relief because of an intervening change in the law regarding improper introduction of "other crimes" evidence;

---

[1]Petitioner has incorporated by reference the arguments raised on direct appeal. *See* Brief in Support at 6. In the presentation of some issues, he has added new, additional theories in support of the claims for habeas relief.

3.      Trial counsel was ineffective;[2]

4.      Petitioner was denied his right to confront a witness against him in that the jury had unfettered access to a videotaped forensic interview of the victim;

5.      Petitioner's marital privilege was violated when his former wife testified;

6.      Petitioner's appellate counsel was ineffective; and

7.      Cumulative error rendered his trial unfair.

## III.    Direct Appeal Claims Adjudicated on the Merits by the OCCA

It has long been settled that "a state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." *Picard v. Connor*, 404 U.S. 270, 275 (1971).  Absent extraordinary circumstances, exhaustion of judicial remedies requires that the claim be properly presented to the highest state court.  *See Brown v. Shanks*, 185 F.3d 1122, 1124 (10th Cir. 1999).  The five propositions of error, as raised by appellate counsel on direct appeal and adjudicated on the merits by the OCCA, are exhausted and subject to review under the standards set forth in the Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA).  *See Turrentine v. Mullin*, 390 F.3d 1181, 1188 (10th Cir. 2004).  Under AEDPA, this Court may grant Petitioner habeas relief only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Under this standard, judicial review is directed to the result of the state appellate court's decision, not its reasoning.  *See Gipson*

---

[2]Petitioner raises the same instances of alleged ineffectiveness of trial counsel that he raised on direct appeal and in his application for post-conviction relief.

*v. Jordan*, 376 F.3d 1193, 1197 (10th Cir. 2004) ("[W]e defer to the [state court's] decision unless we conclude that its result – not its rationale – is legally or factually unreasonable.") (internal citation and quotation omitted).

A state court decision is "contrary to" clearly established federal law for purposes of § 2254 if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the result reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). It is not enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be applied; the state court decision must be "diametrically different," "opposite in character or nature," or "mutually opposed" to the Supreme Court decision itself. *Id.* at 406.

A state court decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "AEDPA's conception of objective unreasonableness lies 'somewhere between *clearly erroneous* and unreasonable to all reasonable jurists.'" *House v. Hatch*, 527 F.3d 1010, 1019 (10th Cir. 2008) (*quoting Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006)). "Thus, 'only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254.'" *Id.* (*quoting Maynard* at 671).

In conducting this inquiry, the factual findings of the state trial and appellate courts are presumed to be correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  *See Short v. Sirmons*, 472 F.3d 1177, 1184 (10th Cir. 2006) (*citing* 28 U.S.C. § 2254(e)(1)).

A.    <u>**Direct Appeal Ground One – Sufficiency of the Evidence**</u>

Petitioner contends that the evidence adduced at trial was insufficient to support his convictions.   The State's primary witness was the eleven-year-old victim, S. H.   *See* Transcript of Proceedings (TR) (Oklahoma County District Court Case No. CF-2003-6028) Vol. II, Mar. 7, 2006 (TR II) at 397-474.   S. H. testified that when she was seven, she had frequently visited Petitioner's house with her aunt, Tamara Hadlock,[3] who was Petitioner's girlfriend at the time.  On one such occasion, S. H. testified, she had gone into the bathroom intending to take a bath.   S. H. testified that Petitioner had followed her into the bathroom, and when she hesitated to undress, Petitioner said, "Go ahead. I've seen little girls naked before." *Id.* at 404.  Petitioner then got on his knees beside the bathtub where S. H. was lying in the water.   S. H. stated that Petitioner "stuck his finger up inside of me." *Id.* at 406. According to S. H., Petitioner then took down his pants, exposed himself to her and asked her if she "would suck it[.]" S. H. testified that she said "no," whereupon Petitioner said, "Please."   When S. H. said "no" again, Petitioner pulled his pants up, turned around and walked back over to the toilet. *Id.* at 411.

---

[3]Tamara [or Tamra] Hadlock's name is variously spelled in the record.

Laura Hadlock, S. H.'s mother, testified for the State.  TR III at 486-540.  Ms. Hadlock testified that in 2002, her sister Tamara Hadlock had often taken care of S. H., and the two sometimes stayed overnight at Petitioner's house.  Ms. Hadlock testified that she had been very busy with work, with her four children, and with caring for her father who was dying of cancer.  Ms. Hadlock further testified that in late September or early October of 2002, S. H. no longer wanted to go to Petitioner's house with Tamara.  Almost a year later, S. H. told her mother about the incident in Petitioner's bathroom.  Ms. Hadlock contacted the police.

Ms. Collyn Moone, a licensed clinical social worker and psychotherapist, testified as to her conclusions derived from a forensic interview with S. H.  TR III at 572-584; 605-633.  According to Ms. Moone, the details about the alleged molestation provided by S. H., combined with her demonstration using Playdo, made S. H.'s allegations believable.  *Id.* at 609-610.[4]

On direct appeal, Petitioner argued that it was factually impossible for him to have committed the alleged crimes in the fall of 2002, as S. H. had testified.  Petitioner's argument centered around the fact that his home was being renovated at that time, and he pointed to the testimony of several witnesses who were working on the renovation.  Scott Allen Fletcher testified that he worked on the renovation of Petitioner's home beginning around the end of August 2002 and ending in December 2002.  TR IV at 703-744.  Petitioner's current wife,

---

[4]A redacted videotape of the forensic interview was played at Petitioner's trial.

Michelle Foote, and his brother, Shawn Christopher Foote, also testified about the renovation of the house during the fall of 2002.  TR IV at 755-756; 826-833.

> The OCCA considered the sufficiency of the evidence on direct appeal:
>
> We review the sufficiency of the evidence in Proposition 1 to determine whether the evidence, viewed in the light most favorable to the State, permits a rational trier of fact to find the elements of the offense beyond a reasonable doubt.  This court accepts all reasonable inferences and credibility choices that tend to support the jury's verdict.  According to this standard, the evidence is more than sufficient to support the convictions.

Response Exhibit 3 (OCCA Direct Appeal Opinion) at 2 (internal citations omitted).

"Under Supreme Court precedent, sufficient evidence exists to support a conviction if, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Matthews v. Workman*, 571 F.3d 1065, 1073 (10th Cir. 2009) (*quoting Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  Because the OCCA applied the *Jackson* standard in deciding Petitioner's sufficiency of the evidence claim on direct review, this Court is limited by AEDPA to inquiring as to whether the OCCA's application of *Jackson* was unreasonable. *Id.* (*citing Brown v. Sirmons*, 515 F.3d 1072, 1089 (10th Cir. 2008)).  Moreover, on collateral review, this Court is not allowed to "weigh conflicting evidence or consider the credibility of witnesses."  *Valdez v. Bravo*, 373 F.3d 1093, 1097 (10th Cir. 2004). "Rather, when 'faced with a record of historical facts that supports conflicting inferences [the court] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution.'"  *Matthews* at 1074 (*quoting Messer v. Roberts*,

74 F.3d 1009, 1013 (10th Cir. 1996)). Applying this standard requires this Court to presume that the jurors resolved apparent conflicts in the testimony of witnesses and did not find the testimony of witnesses for the defense to be credible.

The OCCA's adjudication of this issue did not result in a decision that is contrary to, or an unreasonable application of, Supreme Court law. Habeas relief on this ground is not warranted.

## B. Direct Appeal Ground Two – Evidence of Other Crimes

On direct appeal, Petitioner challenged on state law grounds the introduction of evidence characterized on appeal as evidence of "other crimes." The trial court allowed the prosecutor to ask questions about Petitioner's state of mind when he fled the jurisdiction. The trial court ruled that Petitioner had "opened the door" to this line of questioning by testifying that he had fled because he thought the police would shoot him. TR IV at 987. On cross-examination, the prosecutor asked Petitioner if Petitioner had been aware of other allegations of impropriety against him with a different minor child. TR IV at 988. According to Petitioner, the prosecutor's questions resulted in the interjection of "other crimes" evidence which was more prejudicial than probative. Response Exhibit 1 at 28-32. The trial court ruled that questioning by defense counsel had put Petitioner's state of mind at issue, and the testimony elicited by the prosecution during cross-examination was admissible to impeach Petitioner's testimony as to why he had left the state. *Id.*

The OCCA held that the trial court had not abused its discretion in allowing the "limited inquiry into Appellant's knowledge of other allegations of criminal conduct being investigated at the time he fled the jurisdiction."  Response Exhibit 3 at 2.

"'State court rulings on the admissibility of evidence may not be questioned in federal habeas corpus proceedings unless they render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights.'"  *Chavez v. Kerby*, 848 F.2d 1101, 1102 (10th Cir. 1988) (*quoting Brinlee v. Crisp*, 608 F.2d 839, 850 (10th Cir. 1979)).  In this case, the elicited testimony, properly admitted under state law, did not render Petitioner's trial fundamentally unfair.  It is recommended that habeas relief be denied on this ground.

### C.   Direct Appeal Ground Three – Ineffective Assistance of Trial Counsel

On direct appeal, Petitioner contended that his trial counsel was ineffective in that, by making an issue of Petitioner's character, the prosecution was able to introduce evidence of Petitioner's previous convictions.  Petitioner's trial counsel asked Petitioner's wife, Michelle Foote, whether she considered Petitioner to be a violent person.  Ms. Foote answered, "No." TR IV at 779.  Thereafter, with the approval of the trial court, the prosecutor asked Ms. Foote whether she would consider raping someone and then throwing that person off a 36-foot bridge to be acts of violence.  TR IV at 780-781.  Further questioning of Ms. Foote revealed that she was aware that her husband had been charged with and convicted of the these acts in Pottawatomie County.  *Id.* at 781-782.

Claims of ineffective assistance of counsel are governed by the Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984).  To support such a claim, a

11

defendant must show that his attorney's performance "'fell below an objective standard of reasonableness' and that the unreasonably deficient performance resulted in prejudice." *Lucero v. Kerby*, 133 F.3d 1299, 1323 (10th Cir. 1998) (*quoting Strickland*, 466 U.S. at 688, 691-92).

The OCCA considered Petitioner's claim and applied *Strickland*:

> Under *Strickland v. Washington*, 466 U.S. 668 (1984), Appellant bears a heavy burden to show counsel's performance was objectively unreasonable under prevailing norms; and that counsel's substandard representation creates a reasonable probability that the outcome of the trial would have been different. A reasonable probability is one sufficient to undermine confidence in the outcome.

Response Exhibit 3 at 3 (internal citations omitted).  The OCCA noted that defending against a criminal charge on the basis of the defendant's good character is a legitimate trial tactic, despite the inherent risk that the likely rebuttal will consist of prejudicial testimony about the defendant's bad acts or other crimes, if any.  *Id.* at 3-4.  As for the requirement of prejudice, the OCCA found none:

> Appellant also fails to show any prejudice from counsel's alleged error. Appellant was accused in open court by a courageous eleven (11) year-old witness who clearly described his crimes and withstood a searching and skillful cross-examination.  Appellant testified in his own defense, answering the accusations with a theory of defense that was by turns convoluted and farfetched.   Under these difficult circumstances, trial counsel pursued a coherent trial strategy and presented Appellant's evidence and arguments in the most favorable light.  Appellant cannot show prejudice under *Strickland*, as there is no reasonable probability that, without counsel's alleged unprofessional error, the outcome of the trial would have been different.

*Id.* at 6.  Applying the deferential standard of review to this claim, this Court cannot find that the decision of the OCCA was either contrary to, or an unreasonable application of federal law.  Petitioner is not entitled to habeas relief on this ground.

### D.   <u>Direct Appeal Ground Four – Limitation of Closing Argument</u>

Defense counsel began his closing argument by referring to "The Fugitive," a television drama.  The prosecution objected on the basis that the argument was improper.  Defense counsel stated that he should have "the right to do some persuasion here."  TR V at 1026.  The trial court sustained the objection:

> Persuasion isn't The Fugitive, Mr. Dunlap.  You are talking about closing arguments.  Closing argument is to talk about the evidence in this case.  In fact, you raised that issue in my chambers when you asked will we be talking only about the evidence in this case.  And I have told each of you, including Mr. Ballard, that's all we're going to talk about.
>
> And we are not going to bring in a television drama regarding The Fugitive running away because he was an innocent man and that's where you are headed.  Let's talk about the evidence in this case.

*Id.* at 1026-1027.

The OCCA reviewed this issue for abuse of the trial court's discretion.  The OCCA concluded that the limitation on closing argument was proper because the argument went beyond the evidence and issues properly before the jury.  Response Exhibit 3 at 7.

Generally, parties are given wide latitude in drawing inferences from and commenting on the evidence in the record.  *See Hooper v. Mullin*, 314 F.3d 1162, 1172 (10th Cir. 2002) (*citing Duvall v. Reynolds*, 139 F.3d 768, 795 (10th Cir. 1998)).  In this case, the trial court limited defense counsel's closing argument because it was not based on the evidence in the

13

record.  The OCCA's conclusion that the trial court properly limited defense counsel's closing argument is neither contrary to, nor an unreasonable application of federal law.

### E.     <u>Direct Appeal Ground Five – Cumulative Error</u>

In his fifth ground for relief on direct appeal, Petitioner alleged that cumulative error deprived him of a fundamentally fair trial.  On direct appeal, the OCCA denied Petitioner's claim of cumulative error because no error in any of the preceding propositions was identified.  *See* Response Exhibit 3 at 7.

"Cumulative error analysis is an extension of harmless error and conducts the same inquiry as for individual error focusing on the underlying fairness of the trial."  *Darks v. Mullin*, 327 F.3d 1001, 1018 (10th Cir. 2003) (citations and internal quotations omitted).  The analysis recognizes that the cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error.  *See Duckett v. Mullin*, 306 F.3d 982, 992 (10th Cir. 2002).

Petitioner does not cite any particular errors to support his cumulative error claim but rather, in a general way, asks the Court to consider collectively the alleged trial errors to determine their cumulative effect on his conviction and sentence.  Having reviewed Petitioner's claims, this Court finds the OCCA's determination of Petitioner's cumulative error claim is reasonable and entitled to AEDPA deference.

**IV.**   **Exhausted Claims First Raised in Application for Post-Conviction Relief; Ineffective Assistance of Appellate Counsel Claims**

In his appeal to the OCCA from the trial court's denial of his application for post-conviction relief, Petitioner raised some new claims and recast some of the claims previously raised by appellate counsel on direct appeal. *See* Response Exhibit 5 (Brief in Support of Petitioner's Appeal from Denial of Posst [sic] Conviction Relief) at 7-27. Additionally, Petitioner asserted that his appellate counsel was ineffective in failing to raise these new and recast claims on direct appeal. *Id.* at 14-16.[5]

In its Order Affirming Denial of Post-Conviction Relief, the OCCA reached the merits of Petitioner's ineffective assistance of appellate counsel claims but used an incorrect standard of review. *See* Response Exhibit 6. "The proper standard for assessing a claim of ineffectiveness of appellate counsel is that set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)." *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003). The test is two-fold. First, a petitioner must show that the performance of his appellate counsel was constitutionally deficient by demonstrating that his appellate counsel's conduct was objectively unreasonable. Second, a petitioner must show resulting prejudice by

---

[5]In his second proposition, Respondent contends that the grounds for relief first asserted in Petitioner's Application for Post-Conviction Relief are procedurally barred. *See* Response at 27-32. Because Petitioner raises both the substantive claims and asserts that his appellate counsel was ineffective in failing to raise these claims on direct appeal, this Court need not analyze Respondent's Proposition II. *See Cannon v. Mullin*, 383 F.3d 1152, 1159 (10th Cir. 2004) ("When questions of procedural bar are problematic . . . , and the substantive claim can be disposed of readily, a federal court may exercise its discretion to bypass the procedural issues and reject a habeas claim on the merits.").

demonstrating a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *See id.*

In affirming the denial of post-conviction relief by the trial court, the OCCA added a third element to the *Strickland* test:

> The fact appellate counsel fails to recognize or raise a claim, regardless of merit, is not and cannot alone be sufficient to establish ineffective assistance, or to preclude enforcement of a procedural default.

Response Exhibit 6 (OCCA Post Conviction Opinion) at 2.  The Tenth Circuit has "explicitly disavowed this standard as inconsistent with *Strickland*."  *McGee v. Higgins*, 568 F.3d 832, 838-839 (10th Cir. 2009).

> "It is clearly wrong, as a matter of federal law, to require as a necessary condition for relief under *Strickland*, something beyond the obvious merit of the omitted claim. The very focus of a Strickland inquiry regarding performance of appellate counsel is upon the merits of omitted issues, and no test that ignores the merits of the omitted claim in conducting its ineffective assistance of appellate counsel analysis comports with federal law. A sufficiently meritorious omitted claim certainly can, by itself (or in relation to other issues that counsel did pursue), establish constitutionally deficient performance by appellate counsel."

*Id.* at 839 (*quoting Cargle*, 317 F.3d at 1205).

Because the OCCA used an incorrect standard of review in its decision regarding Petitioner's ineffective assistance of appellate counsel claim, the decision on this issue is contrary to Supreme Court law.  Therefore, the OCCA's decision is not entitled to deference under AEDPA, and the claim is reviewed *de novo*.  Pursuant to *McGee*, this Court will review *de novo* Petitioner's claims of ineffective assistance of appellate counsel using the

two-part cause and prejudice test set forth in *Strickland*.[6]  To determine whether Petitioner's appellate counsel was ineffective, this Court must consider the merits of the underlying claims.  *Id.*

### A.   Sufficiency of the Evidence; Actual Innocence

Petitioner challenges the manner in which his appellate counsel asserted the insufficiency of the evidence claim raised on direct appeal.  Further, he asserts that the insufficiency of the evidence makes him "actually innocent" and "represents 'cause' for failure to raise the issue[s] procedurally correctly."  Brief in Support [Doc. #4] at 9.  Petitioner's ground for relief rests on what he perceives as inconsistencies in the statements and testimony of S. H.  He contends that the inconsistencies make the testimony of S. H. suspect.  Petitioner also contends that S. H.'s uncorroborated testimony is insufficient to prove guilt beyond a reasonable doubt.

As discussed *supra* at 9, "sufficient evidence exists to support a conviction if, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Matthews v. Workman*, 571 F.3d at 1073 (*quoting Jackson v. Virginia*, 443 U.S. 307 at 319).  A *de novo* review of this ground for relief leaves no doubt that, despite some inconsistencies in the testimony of S. H., any rational trier of fact could have found the essential elements of the

---

[6]As the Tenth Circuit Court of Appeals noted in *McGee*, a court need not address the "cause" part of the *Strickland* test if it is "'easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice.'" *McGee* at 839 (*quoting Strickland*, 466 U.S. at 697).

crimes beyond a reasonable doubt. Petitioner has not demonstrated either cause or prejudice resulting from appellate counsel's failure to point out inconsistencies in the testimony of S. H. Petitioner is not entitled to habeas relief on this ground, and the alleged ineffectiveness of his appellate counsel does not serve as cause for excusing any procedural default.

### B.   Failure to Challenge Admission of "Other Crimes" Evidence

As discussed *supra* at 10-11, appellate counsel challenged the admission of "other crimes" evidence on direct appeal. The focus of the issue on direct appeal was, however, different from the focus of the issue first raised by Petitioner in his application for post-conviction relief. The "other crimes" evidence which Petitioner challenged on post-conviction was elicited during the testimony of Petitioner's former wife, Michelle Finney, who testified that Petitioner had told her that he had had sexual relations with other young girls. She further testified that Petitioner had told her about his sexual fantasies involving young girls. *See* TR III at 634-648.

Petitioner asserts that this testimony was admitted under the "greater latitude" rule set forth by the OCCA in *Myers v. State*, 17 P.3d 1021, 1031 (Okla. Crim. App. 2000) (courts may permit a "greater latitude" of proof as to other like occurrences in sexual assault cases). Because *Myers* was overruled by the OCCA in *James v. State*, 152 P.3d 255, 257 (Okla. Crim. App. 2007), Petitioner contends that he is entitled to habeas relief. The OCCA decided *James* on January 8, 2007. This date falls before the OCCA's August 29, 2007, Summary Opinion on Petitioner's direct appeal, but after appellate counsel had filed the appellate brief on October 29, 2006. Petitioner cannot, however, demonstrate that he suffered prejudice

because the record does not establish that the challenged testimony was admitted pursuant to the "greater latitude" rule.

In a pre-trial hearing to determine the admissibility of testimony regarding "other crimes," the prosecutor did raise the issue of the "greater latitude" rule in arguing for the admissibility of testimony, not from Michelle Finney, but from Tamara Hadlock, a potential witness for the State. *See* TR I at 5-8. The trial court ruled that Tamara Hadlock's proposed testimony, as described by counsel without foundation as to time frame, was not admissible even under the "greater latitude" rule. Tr. I at 13. The trial court's ruling on the admissibility of Ms. Finney's testimony, on the other hand, was not based on the "greater latitude" rule. Rather, the trial court found that the testimony of Ms. Finney was admissible as evidence of motive, common scheme or plan. *See* TR I at 21. In overruling the "greater latitude" rule set forth in *Myers*, the OCCA did not preclude the admission of evidence of all prior bad acts. Rather, the OCCA stated that "[e]vidence of a prior bad act may be admissible if it is offered for a purpose specifically identified in [Okla. Stat. tit. 12, § 2404(B)].[7] *James v. State*, 152 P.3d at 257.

---

[7]"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." Okla. Stat. tit. 12, § 2404(B).

Because Ms. Finney's testimony was admitted under state law,[8] without application of the "greater latitude" rule, Petitioner cannot demonstrate that the results of his appeal would have been different if appellate counsel had raised this claim on direct appeal.

### C.    Failure to Raise Additional Ineffective Assistance of Trial Counsel Claims

Petitioner contends that appellate counsel was ineffective in failing to raise additional ineffective assistance of trial counsel claims. None of the underlying claims is meritorious, and Petitioner is not, therefore, entitled to relief on this ground.

### 1.    Failure to Lay Proper Foundation and Failing to Object to Coaching of the Prosecutor by the Trial Court

Petitioner challenges the following exchange with the prosecutor on cross-examination of Petitioner regarding the reasons for his flight:

Q.    You didn't go down to Mexico because of a pick-up order. Right?

A.    I fled because of the perceived desire of Shelly Tomlin to put my son into DHS custody where I didn't consider he would be safe.

Q.    Well, that's not the whole picture is it, sir?

A.    No, it's not. Certainly not.

Q.    Because you were aware that there was – or you were aware of the possibility of an arrest warrant. Right?

A.    My motivations changed. Yes, that's correct.

---

[8]As discussed *supra* at 11, rulings on substantive claims regarding the admissibility of evidence may not be questioned in federal habeas corpus proceedings unless they render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights. Having reviewed this claim *de novo*, this Court finds no such prejudice.

Q.      And you didn't want to be taken into custody.  Right?

A.      That is not correct.

Q.      You wanted to be arrested?

A.      It's not even a very high bond, sir.  It wouldn't have been hard to make at all.  I had already hired an attorney for this case.

Prosecutor:     Your Honor, may we approach?

The Court:      Yes.

Prosecutor:     Your Honor, he's testified now that the reason he didn't want to was because he's made bond and it was a high bond and he wasn't concerned about it.  I believe that's opened the door to go into other allegations that he was aware of that would be a motivation, then, that were not just about bond, but now there are other allegations that are out there involving Sarah Daniels involving the Pottawatomie County case as well that came to light during this time period.

Defense:        You're saying there was a warrant issued?

Prosecutor:     There was a warrant issued on October 31st in Pottawatomie County.

Defense:        That's not when he left.  He left on October 29th.

Prosecutor:     And he stayed gone for a number of weeks.

The Court:      The first issue goes to the reason for his initial leaving.  You may get into that only if you can lay a foundation.  The second issue as to why he continued to stay gone, he's opened the door because he said he thought the police said he was armed and dangerous and he was a danger and they were going to shoot him.  He's opened the door.  You need to ask some follow-up questions about what his thoughts was but be careful where you go.

21

Prosecutor:    Your honor, just so I understand your ruling, you want me to lay a foundation – I need to lay a foundation for it.  My next question will be "Were you aware that there were additional allegations", and then ask him who Sarah Daniels is and go from there.

The Court:    Yes.  Proceed.

TR IV at 985-987.  A review of the testimony and proceedings show that Petitioner, through his own testimony, opened the door to questions concerning another victim and charges made or to be made in Pottawatomie County.  Petitioner's conclusory allegation is insufficient to determine how Petitioner would have had his counsel "lay a foundation to object" to the prosecutor's questions.  Moreover, the prosecutor's request for clarification of the trial court's ruling and the court's response does not amount to "coaching" by the trial court.  Petitioner has failed to show that his counsel's representation was deficient in this respect.

### 2.    __Affidavit of Tamara Hadlock__

Petitioner claims that trial counsel was ineffective in failing to secure admission of an affidavit signed by Tamara Hadlock.  According to Petitioner, statements made in the affidavit provide information that would have confirmed the theory of the defense.  Petitioner contends that the affidavit was admissible pursuant to Okla. Stat. tit. 12, § 2804.[9]

Tamara Hadlock received a subpoena to testify at trial for the State.  *See* Original Record at 169.  Towards the end of the trial day on March 8, 2006, the prosecutor informed the trial court that Tamara Hadlock was present.  Additionally, the prosecution informed the

---

[9]This statute contains exceptions to introduction of hearsay when the declarant is "unavailable" as a witness.

trial court that earlier that morning, defense counsel had informed him of the existence of the affidavit in question.   The prosecutor stated that defense counsel had not produced the affidavit during discovery, and the prosecutor asked to see the affidavit before he questioned the witness.  TR III at 679-681.  The trial court ultimately ended the proceedings for the day. *Id.* at 681.  When court convened the next morning, the State rested without calling Tamara Hadlock.  TR IV at 691.  There is only one other reference to possible testimony of Tamara Hadlock.  Defense counsel stated that he had been trying to get Ms. Hadlock to testify, that she had been served with a subpoena, and that she was fighting the subpoena.  When defense counsel learned that Tamara Hadlock was not present, he called Petitioner as his last witness. TR IV at 871-872.

Respondent contends that the affidavit was inadmissible because Tamara Hadlock was not "unavailable" as that term is statutorily defined in Okla. Stat. tit. 12, § 2804:

> "Unavailability as a witness," as used in this section, includes the situation in which the declarant:
>
> 1. Is exempt by ruling of the court on the ground of privilege from testifying concerning the subject matter or [sic] of the declarant's statement;
>
> 2. Persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so;
>
> 3. Testifies to a lack of memory of the subject matter of the declarant's statement;
>
> 4. Is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or
>
> 5. Is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance or, in the case of a

23

hearsay exception under paragraphs 2, 3 or 4 of subsection B of this section,
the declarant's attendance or testimony, by process or other reasonable means.

Okla. Stat. tit. 12, § 2804(A).  Respondent's point is well-taken.  Nothing in the record

suggests that Tamara Hadlock was "unavailable" to testify.  The fact that she had been

present to testify for the State the day before indicates that her presence could have been

procured by service of process.  Moreover, given the evidence against Petitioner, there is no

indication that the outcome of the trial would have been different had Tamara Hadlock's

statement been introduced.

### 3. <u>Failure to Object to Argumentative Cross-examination</u>

Plaintiff references a portion of the prosecutor's cross-examination of Petitioner's

wife, Michelle Foote, and concludes that it was "argumentative."

> Q:    And you made the statement "Mr. Foote was afraid of getting caught
> because he didn't want to go to the penitentiary."  Do you remember
> saying that?
>
> A:    No, I don't remember saying that.
>
> Q.    Would it help you if I told you that conversation was recorded?
>
> A.    I know it was recorded.
>
> Q.    You know it was recorded and are you still denying to this jury –
>
> A.    I never denied that I said it.  I don't remember saying it.  I deny
> remember saying it.
>
> Q.    Let me ask you this.  If that was on the tape, then would that be a fair
> statement that you said that?
>
> A.    Yes.

TR IV at 798.  This line of questioning by the prosecutor was relevant, and the witness's prior statement was admissible as impeachment evidence.  *See United States v. Turner*, 553 F.3d 1337, 1349-1350 (10th Cir. 2009) (cross-examination regarding prior inconsistent statement is relevant and is usually admissible for impeachment).   Trial counsel's representation was not deficient, and Petitioner cannot show that he was prejudiced by trial counsel's failure to object to the prosecutor's questions.

### 4.      <u>Failure to Object to Hearsay</u>

Petitioner contends that trial counsel should have objected to the introduction of "hearsay evidence" elicited through the testimony of Michelle Finney.  Under Oklahoma law, "hearsay" is defined as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Okla. Stat. tit. 12, § 2801(A)(3).

First, Petitioner contends that Ms. Finney "quoted" Petitioner's mother.  A review of the testimony in question, however, shows that Ms. Finney did not divulge the contents of any statement made by Petitioner's mother:

> Q.      And at the time that all of these allegations involving [S. H.] came forward, did you have a brief conversation with Mr. Foote's mother regarding the allegations?
>
> A.      I don't remember when the conversation was with his mother but I did have a conversation with her at some point about his sexual nature.

TR III at 637.  Ms. Finney's answer to the prosecutor's question does not constitute hearsay. The question and answer established only that the two women had had a conversation.  Ms. Finney did not quote Petitioner's mother, and no hearsay was introduced.

Petitioner also challenges introduction of Ms. Finney's testimony regarding his relationship with two of his young cousins, A. F. and H. F.  Ms. Finney testified that while she was married to Petitioner, she found a note to Petitioner from his fifteen-year-old cousin in which the girl had written that she didn't regret what had happened between them.  TR III at 640.  This statement is not hearsay as it was not offered for the truth of the matter asserted – that A. F. did not regret what had happened.  *See* Okla. Stat. tit. 12, § 2801(A)(3).

On cross-examination, Ms. Finney stated that Petitioner had admitted that something happened between him and A. F.  TR III at 646.  Ms. Finney further testified that Petitioner told her he had tried to have intercourse with H. F., who was then twelve or thirteen years old, but that "it hurt her and he had to stop."  TR III at 640-641.  These statements are not hearsay under Oklahoma law.  *See* Okla. Stat. tit. 12, § 2801(B)(2)(a) (a statement is not hearsay if "[t]he statement is offered against a party and is the party's own statement, in either an individual or representative capacity).

Petitioner is not entitled to habeas relief on this ground.

### 5.    Failure to Object to "Testimony" of the Prosecutor

Petitioner challenges the introduction of testimony which indicated that he had had sex with Tamara Hadlock when she was only sixteen years old.  Previously, Laura Hadlock had testified that Tamara was fifteen when she met the Petitioner.  The prosecutor questioned

Petitioner about his relationship with Tamara.  Petitioner insisted that he did not know Tamara before she was sixteen or seventeen. TR IV at 967-968.  This line of questioning is not tantamount to testimony of the prosecutor.  Trial counsel's performance was not deficient, and Petitioner was not prejudiced by counsel's failure to object to the cross-examination questions of the prosecutor.

### 6. Failure to Object to Hearsay Testimony of Detective Krug

Petitioner argues that his trial counsel should have objected to hearsay testimony of Detective Krug.  Specifically, the testimony Petitioner characterizes as "hearsay" consisted of Detective Krug's account of the evening he and Detective Billy Patten attempted to execute an arrest warrant and take Petitioner into custody.  Detective Krug testified that Petitioner was not at his home when the two officers arrived to execute the warrant.  Thereafter, Detective Patten made several cell phone calls to Petitioner in order to try to convince Petitioner to voluntarily surrender.  Petitioner reportedly stated several times that he would voluntarily surrender.  Detective Krug testified as to the nature and content of the telephone calls, even though it was Detective Patten who actually spoke to Petitioner.

As discussed *supra* at 25, a statement is not "hearsay" unless offered in evidence to prove the truth of the matter asserted.  Detective Patten's statements were not offered to prove the truth of the matter asserted – that Petitioner would voluntarily surrender.  Rather, Petitioner became a fugitive.  Had trial counsel objected to this testimony as hearsay, the objection would have overruled.

27

### 7.    **Failure to Properly Redact Videotape**

Petitioner's allegation that his trial counsel failed to properly redact the videotape of the forensic interview of the victim is without merit.  During the interview, S. H. stated that Petitioner had hit her aunt.  As discussed in further detail in section D *infra*, S. H. testified at trial, on cross-examination, that she had kept silent about Petitioner's actions because she was afraid Petitioner would hurt her mother because he used to hit her aunt.  TR II at 427.  This testimony was elicited from defense counsel who asked S. H. why she had waited so long to tell anyone about the incident in question.  This line of questioning was sound trial strategy, which might have cast doubt on the truth of S. H.'s accusations, and trial counsel's representation was not deficient in this regard.

### 8.    **Failure to Inform Petitioner about Counsel's Attention Deficit Disorder**

Just before the cross-examination of S. H., trial counsel requested a short break so that he could locate his copy of the preliminary hearing transcript.  Counsel informed the trial court that he sometimes misplaced things and that he had been diagnosed with "ADD" the year before.  The trial court granted counsel's request.  TR II at 421.  Petitioner contends that his counsel's attention deficit disorder caused counsel to make numerous mistakes, resulting in ineffective assistance of counsel.  Because none of the ineffective assistance of counsel claims raised in this action are meritorious, however, trial counsel's failure to disclose his disability to Petitioner was not prejudicial.  Petitioner is not entitled to habeas relief on this ground.

### D.     Failure to Challenge Admission of Videotaped Interview with Victim

Petitioner contends that he was denied his constitutional right to confront witnesses against him when the State was allowed to play a videotaped forensic interview of S. H. recorded before the trial.  He further challenges the trial court's decision to allow the videotape to be given to the jury during deliberations.

Under Oklahoma law, statements made by children under thirteen years old describing sexual contact are admissible provided that certain statutorily defined conditions are met:

**§ 2803.1.  Statements of children not having attained 13 years or incapacitated persons describing acts of physical abuse or sexual contact – Admissibility in criminal and juvenile proceedings**

A.  A statement made by a child who has not attained thirteen (13) years of age . . . , which describes any act of physical abuse against the child . . . or any act of sexual contact performed with or on the child . . . , is admissible in criminal and juvenile proceedings in the courts in this state if:

1.  The court finds, in a hearing conducted outside the presence of the jury, that the time, content and totality of circumstances surrounding the taking of the statement provide sufficient indicia of reliability so as to render it inherently trustworthy.  In determining such trustworthiness, the court may consider, among other things, the following factors: the spontaneity and consistent repetition of the statement, the mental state of the declarant, whether the terminology used is unexpected of a child of similar age . . . , and whether a lack of motive to fabricate exists; and

2. The child . . . either:

a.  testifies or is available to testify at the proceedings in open court or through an alternative method pursuant to the provisions of the Uniform Child Witness Testimony by Alternative Methods Act or Section 2611.2 of Title 12 of the Oklahoma Statutes, or

> b.  is unavailable as defined in Section 2804 of this title as a witness.  When the child . . . is unavailable, such statement may be admitted only if there is corroborative evidence of the act.

> B.  A statement may not be admitted under this section unless the proponent of the statement makes known to the adverse party an intention to offer the statement and the particulars of the statement at least ten (10) days in advance of the proceedings to provide the adverse party with an opportunity to prepare to answer the statement.

Okla. Stat. tit. 12, § 2803.1.

In this case, the trial court held an *in camera* hearing at which Ms. Collyn Moone testified as to the circumstances surrounding the forensic interview.  TR II at 289-310.  The trial court carefully considered the trustworthiness of the videotaped statement and concluded that it was admissible.  TR II at 309-310.  Moreover, S. H. testified at trial and was subjected to thorough cross-examination.  TR II at 396-474.  Finally, the State had filed a Notice of Intent to Use Child Hearsay Under 12 O.S. § 2803.1 on December 30, 2003, thereby complying with the notice requirement in § 2803.1(B).  *See* Original Record at 27.

Petitioner further challenges the admission of the videotaped interview on the basis that it was more prejudicial than probative.  He objects to statements allegedly made by S. H. to Ms. Moone that Petitioner had raped his two daughters.  He also challenges statements concerning his physical abuse of Tamara Hadlock.  The redacted portion of the videotaped interview does not include references to Petitioner's having raped his daughters.  *See* State's Exhibit 1.  The statements regarding the physical abuse of Tamara Hadlock, S. H.'s aunt, was relevant to S. H.'s delay in telling anyone about Petitioner's actions.  On cross-examination,

S. H. testified that she did not tell anyone about Petitioner's actions because she was afraid Petitioner would hurt her mother "because he used to always hit Tamara." TR II at 427.

Petitioner also challenges the trial court's decision to allow the jury to replay the videotaped interview during deliberations. When the jury sent a note to the trial court requesting to view the videotape, the trial court allowed both counsel to argue the issue. TR V at 1085-1091. The trial court determined that the videotaped interview was not testimonial, and that it could be replayed to the jury.

This evidence was properly admitted under state law, and there is nothing to support a conclusion that the evidence rendered Petitioner's trial fundamentally unfair. There is also no evidence that the jury's "unfettered access" to the videotape rendered Petitioner's trial fundamentally unfair. It is recommended that habeas relief be denied on this ground.

### E.    Failure to Assert Cumulative Error Based on Claims Asserted in Instant Case

As discussed *supra* at 14-15, a cumulative error analysis focuses on the combined effect of two or more errors which, however harmless when viewed individually, could collectively rise to the level of reversible error. Petitioner's ineffective assistant of appellate counsel claims have been reviewed *de novo*. Because Petitioner has failed to demonstrate that he was prejudiced by appellate counsel's omission of any of the issues discussed above, this Court must necessarily find that Petitioner's claim of cumulative effect is without merit.

It is recommended that habeas relief be denied on the grounds that appellate counsel was ineffective.

## V.    <u>Unexhausted, Procedurally Barred Claims</u>

As part of his challenge to the effectiveness of trial counsel in his third ground for relief, Petitioner states that trial counsel should have impeached S. H.'s testimony with a line-by-line comparison of her in-court testimony with her out-of-court statements made during the forensic interview.   As part of his challenge to the admissibility of the videotaped forensic interview in ground four, Petitioner claims that this evidence was admitted in violation of *Crawford v. Washington*, 541 U.S. 36 (2004) (out-of-court testimonial statements of a witness who is unavailable to testify at trial is not admissible unless the defendant had had an opportunity to cross-examine the witness when the statement was made).[10] In his fifth ground for relief, Petitioner states that the testimony of his former wife, Michelle Finney, violated the marital privilege.   In two arguments first raised in his Application for Post-Conviction Relief, incorporated by reference, Petitioner contends he was denied an impartial jury of his peers.   None of these issues have been presented to the OCCA.

As discussed *supra* at 5, a habeas petitioner must exhaust his claims by presenting them to the State's highest court for criminal appeals, in this case, the OCCA.   Petitioner's claims which have not been presented to the OCCA are technically unexhausted.   If Petitioner were to return to state court to raise these claims in a second application for post-conviction relief, however, the claims would be procedurally barred pursuant to Okla. Stat. tit. 22, § 1086.   Therefore, this Court may apply the doctrine of anticipatory procedural bar

---

[10]The Court notes that in this case, the witness was available and did testify.

32

to Petitioner's unexhausted claims. *See Cummings v. Sirmons*, 506 F.3d 1211, 1223 (10th Cir. 2007) (claim that was technically unexhausted was nonetheless procedurally barred because if claim were raised for first time in a second application for post-conviction relief, Oklahoma state courts would deem the claim procedurally barred); *see also Anderson v. Sirmons*, 476 F.3d 1131, 1139 n. 7 (10th Cir. 2007) ("Anticipatory procedural bar occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it.") (internal quotation marks omitted).

A habeas petitioner faces a daunting task in overcoming an independent and adequate state procedural bar:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

A state procedural bar is "independent" if it relies on state law, rather than federal law. *See Smith v. Workman*, 550 F.3d 1258, 1274 (10th Cir. 2008) (citations omitted). A state procedural default rule is "adequate" if it is firmly established and regularly followed by the state courts. *Id.* (citations omitted). In this case, the procedural bar is based on state law, *see* Okla. Stat. tit. 22, § 1086, and the Tenth Circuit Court of Appeals has found Oklahoma's bar of claims not raised on direct appeal to be independent and adequate with respect to claims

other than some ineffective assistance of counsel claims.  *See id.*  To meet the fundamental miscarriage of justice standard, a petitioner must supplement his habeas claim with colorable showing of factual innocence.  *Moore v. Reynolds*, 153 F.3d 1086, 1097 (10th Cir. 1998) (*citing Demarest v. Price*, 130 F.3d 922, 941 (10th Cir. 1998)).

In this case, Petitioner has not shown cause for his having failed to raise these claims in the appeal from the trial court's denial of his application for post-conviction relief. Although Petitioner states that he is "actually innocent" of the crimes for which he was convicted, this assertion is not convincing, given the evidence presented against him at trial. To support his actual innocence claim, Petitioner states that he was not living in his house during the time period designated by  S. H.  He does not, however, claim factual innocence – a showing necessary to meet the "fundamental miscarriage of justice" standard.  Petitioner is not entitled to review of these procedurally barred claims.

## RECOMMENDATION

It is recommended that the Petition for Writ of Habeas Corpus [Doc. #1] be denied.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636.  Any objections must be filed with the Clerk of the District Court by October __20th__, 2009.  *See* Local Civil Rule 72.1.  Failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## **STATUS OF REFERRAL**

This Report and Recommendation disposes of all matters referred by the District Judge in this case and terminates the referral.

DATED this __30th__ day of September, 2009.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE